IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 3, 2024

## STATE OF TENNESSEE v. GEMEYAL STROWDER

**Appeal from the Circuit Court for McNairy County**
No. 4913     J. Weber McCraw, Judge

_____

**No. W2023-00936-CCA-R3-CD**

_____

The defendant, Gemeyal Strowder, entered an open plea to aggravated robbery, and the trial court imposed a sentence of eighteen years' incarceration in the Tennessee Department of Correction. On appeal, the defendant argues the trial court failed to consider applicable mitigating factors. After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Jamie L. Davis, Adamsville, Tennessee, for the appellant, Gemeyal Strowder.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Mark Davidson, District Attorney General; and Lisa Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On April 27, 2023, the defendant entered an open plea to aggravated robbery (count one), with sentencing to be determined by the trial court.[1] The facts underlying the plea, as explained by the State, were as follows:

_____

[1] The defendant was also indicted for aggravated assault (count two), possession of a firearm by a convicted felon (count three), and theft under $1,000 (count four), but those charges were dismissed as part of the plea deal.

[O]n May 18th of 2022, McNairy County dispatch gave county unit the call for an armed robbery in progress at the Ramer Quick Stop located at 4453 Highway 57 West in Ramer. Dispatch advised a black male wearing a mask had come in the store with a firearm asking the store clerk for all the money. Dispatch then advised the male subject got into a car with a female driver and left the scene traveling north on Friendship Road. Deputy Davine was traveling on New Bethel Road toward Friendship Road when she passed a vehicle similar to that description, turned around, initiated a traffic stop of that vehicle in front of an address of 2975 New Bethel Road. She noticed the vehicle was driven by a female with the opposite being a black male. She ordered the black male subject out of the car and told him to show her his hands. He complied, and explained to him that he was detained as she was investigating an incident that just happened at the Ramer Quick Stop.

During a pat[-]down of the male to make sure he did not have any weapons for her safety, approximately nine hundred thirty-five dollars cash was stuffed in his right front pants pocket. She secured the money. She then asked the female driver to exit the vehicle, which she also complied, female identified as Christy Barnes, and the male identified as the defendant []. During this time, Deputy Hawkins went to the Ramer Quick Stop to speak with the store clerk. He spoke with Ms. Dorothy Switzer. She advised that the black male was wearing a mask came into the store, held a gun across the counter at her and stated "give me all of it." Ms. Switzer did give all the cash in the cash register to the male. Sergeant Gilbert then arrived on the scene and he *Mirandized* [the defendant] to which he stated he understood his rights. While speaking with Sergeant Gilbert, [the defendant] did admit to going to the Quick Stop with a firearm and asking for all the money. He stated that Ms. Barnes did not know what was going on – did not know he was going to rob the store. Sergeant Gilbert also *Mirandized* Ms. Barnes to which she stated she understood her rights. Ms. Barnes stated that she did not know what [the defendant] had done, that he had just asked her to drop him off to use the restroom. At that time a search of the vehicle was conducted. During the search a black mask was found in the console along with a 9 mm pistol in the passenger floorboard. While searching Ms. Barnes' property, a glass pipe, scale, and grinder was found. All these items were placed into evidence. The vehicle was towed, and [the defendant] was charged as he was indicted. After he was arrested and then incarcerated, [the defendant] did make several phone calls the State believes were incriminating as well, that we would plan to use if we went forth to trial, specifically those being on 05/18 of 2022 when whoever he was talking to

says "Man, which way did y'all go" and he said, "I went on Friendship Road," one on 05/19/22 he says "I didn't do this s**t" – "I did this s**t and got away. It's just the MF that was driving ain't no driver," 05/19/22 also talks about the times and thinks he was set up. 05/19/22 also he talked about the money was going to change the situation, he was going to buy whoever he was talking to a ring. Also, on 05/19/22 he's talking about why he got an agg[ravated] assault charge and says, "It's my word against theirs. They got me on camera but they don't got me on camera." 05/19/22 also talking to someone, says "I didn't shoot anybody. I just had a gun." Also, on 05/19/22 says "I'm still thinking about how I got caught. That s**t just got weird but if I had just listened to you, if I had went through Ramer, I'd be straight." And all those calls were provided to Counsel in discovery as well.

During the sentencing hearing, the State introduced into evidence the presentence report, certified copies of three prior aggravated robberies, and a written victim impact statement. The defendant also provided an allocution statement, apologizing for his actions and stating that he was angry at the time of the of the offense because his grandmother had recently passed away.

In sentencing the defendant, the trial court stated it considered the evidence presented during the guilty plea hearing and the sentencing hearing including, the presentence report, the defendant's statement, and the arguments of counsel. In reviewing the appropriate and applicable enhancement factors, the trial court found enhancement factors (1), the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, and (8) the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8). The trial court did not find any applicable mitigating factors. At the conclusion of the sentencing hearing, the trial court sentenced the defendant as a Range II offender to eighteen years' incarceration at 100%.

## *Analysis*

On appeal, the defendant contends the trial court erred in "failing to consider mitigating factors without cause." The State submits the trial court properly sentenced the defendant. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5)

evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id*. at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The defendant argues the trial court erred in failing to consider the defendant's "truthfulness, candor, cooperative nature, and his willingness to accept punishment." He submits the trial court failed to place on the record any reasoning why the mitigating factors argued by the defendant were not considered when deciding the length of the defendant's sentence. When discussing mitigating factors, the trial court noted

> [w]ith regard to mitigating factors, there are no statutory mitigating factors, although Counsel argued for reasons why the sentence should be within the low range of the sentencing options.

Although the defendant requested mitigating factor (13) based on the defendant's truthfulness, candor, and willingness to accept punishment, the trial court did not articulate findings on the record to explain why factor (13) was inapplicable. While the trial court should have made more specific findings regarding its denial of this mitigating factor, any error was harmless in light of the existing enhancement factors, particularly that the defendant was on probation at the time the offense was committed and that the defendant had a history of criminal behavior in addition to the felonies used to establish his sentencing range. Furthermore, the "misapplication of an enhancement factor or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act." *Bise*, 380 S.W.3d at 706.

Here, the defendant was convicted of a Class B felony, aggravated robbery and, as a Range II offender, was facing a sentence of not less than twelve nor more than twenty years in prison. Tenn. Code Ann. § 40-35-112(b)(2). The trial court imposed an applicable within-range sentence after properly considering the evidence adduced at the guilty plea and sentencing hearings, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, the potential for rehabilitation, and the evidence of enhancement and mitigating factors. *Id.* §§ 40-35-103(5), -114, -210(b). Accordingly, the defendant is not entitled to relief on this issue.

## *Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE